### CENTROSOYUS–AMERICA, Inc., v. UNITED STATES.

District Court, S. D. New York. January 28, 1929.

For former opinion, see 30 F.(2d) 302.

Harry D. Thirkield, of New York City, for libelant.

Charles H. Tuttle, U. S. Atty., of New York City (H. F. Birnbaum, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

KNOX, District Judge. ■ After my decision in the above-entitled case was filed on November 20, 1928, counsel for respondent applied for a reargument upon the point that a liberty or deviation clause cannot be said to fall within a proper definition of either a "condition" or an "exception" as those words are generally known and recognized in marine shipping documents. By way of persuading the court to grant a reargument, counsel called attention to Hogarth Shipping Co., Ltd., v. Blyth, Green Jourdain & Co., Ltd., 2 K. B. 534; Serraino v. Campbell, 1 Q. B. 283; and Diederichsen v. Farquharson, 1 Q. B. 151. These cases contain holdings to the effect that "conditions" relate to matters to be performed by the consignees of goods, and that "exceptions" have to do with exemptions in favor of the shipowner's liability to carry and deliver the goods safely. From this I am urged to say that the clause, "all other conditions and exceptions as per Charter Party, dated Reval 10—2—26," as contained in the bills of lading issued by the Natirar, is not sufficient to incorporate therein the deviation clause of the charter party.

According to my view of the verity of things, a liberty or deviation clause which relieves a shipowner from the performance of the obligations of a contract to carry goods directly and without unnecessary delay from the point of shipment to the port of destination, and which obligation, in the absence of the liberty clause, would strictly be binding upon him, may well be nothing more or less than an exemption in favor of the shipowner from his liability to carry and deliver goods safely. In so far as the liberty relieves the shipowner from such deterioration and damage as come to the goods as a result of the exercise of the privileges of the liberty, it is an exemption of that precise character. I see no reason, therefore, why such a clause should not fairly be regarded as an "exception."

But, assuming that this line of thought is inaccurate, and perhaps erroneous, and that a term of a charter party which specifies the extent of the right of a ship to deviate from the accustomed route of a prescribed voyage is not, standing alone, to be considered as an "exception" in favor of the shipowner, it was altogether competent for the parties, if they saw fit to do so, to include a nonrelated matter within the meaning of the word "exception." From this standpoint, also, I think the argument is in favor of the present libelant.

When the clause "All other conditions and exceptions as per usual American Scantic Line bill-of-lading," was typewritten at the foot of the charter party, it was meant to include all of the terms relating to the carriage of goods which were contained in that form of shipping document, *and which were not particularly specified in the terms of the charter party.* The latter document contained strike, war, and ice clauses, as well as numerous other terms which, if respondent's rule of strict construction be adopted, it would be difficult to characterize as either "conditions" or "exceptions." Nevertheless, in seeking to amplify the terms which should govern their contractual relationship, the parties used language which indicates that, in their minds, the meaning to be given to, "All *other* conditions and exceptions as per American Scantic Line bill-of-lading," was that of "terms of shipment." To state the matter somewhat differently, the phrase, "all other conditions and exceptions," was used synonymously with that of "all other terms."

■■ Were this not the fact, there would be a marked inconsistency between the deviation clause of the two shipping documents, and such inconsistency would extend, perhaps, to other portions of the papers. And, if ambiguities and inconsistencies can be avoided by construing words of art in the sense in which the parties apparently used them, such construction should, in my opinion, be employed.

As pointed out in my previous opinion, the bills of lading were issued in the light thrown upon them by the charter party to which they referred. The phrase, "all other conditions and exceptions," as contained in the body of the bill, was used in the same sense as it was employed in the charter party, and must be held to have included the deviation clause of the latter document. I cannot believe that shipping men, more than any others, always use words of art with a keen appreciation of the breadth or narrowness of meaning that courts have ascribed to them in particular documents in which, under other and different states of facts, a judicial construction of particular words has been required. A court's chief concern, when called upon to construe the phraseology of persons who have sought to express their own ideas, even though they have done so loosely, is to effectuate their real intention and purpose,

The construction which has been placed upon the instant documents will, I believe, do that very thing.

In asking for a reargument, respondent also suggests that my previous opinion is not clear as to whether the Natirar was held to have deviated before reaching Boston, or only as a result of having proceeded from that port to Norfolk, before coming to New York. The criticism is well founded, and I should clarify the opinion in this particular.

In Luduc v. Ward, 20 Q. B. 475, it was said that when a vessel, in making a particular voyage, is given liberty to call at any ports in any order, the ports to which the liberty applies "must be ports which are substantially ports which will be passed on the named voyage." Here the voyage was from Reval to New York. After leaving Reval, the Natirar first went to Hamburg. That stop, perhaps, was justified inasmuch as Hamburg may be said to have been a port to be passed in the route from Reval to New York. But, granting this to be true, the vessel was not privileged, after leaving Hamburg, to again pass through the Keil canal and go to Gothenburg. It was her duty, upon departing the German port, to proceed directly to New York. Instead, she retraced a good part of the distance traveled in going from Reval to Hamburg, and went to a port which, under a most liberal interpretation of her liberty, was not a "port which (was) substantially" one that would "be passed on the named voyage" from Reval to New York. The journey to Gothenburg, as well as the trip from Boston to Norfolk, before the arrival at New York, constituted deviations not permitted by the liberty in favor of the Natirar, and inasmuch as the first of these occurred before there was any damage to libelant's goods, a decree for full damages must pass against the respondent.